UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN STEVEN OLAUSEN,<br><br>  Plaintiff,<br><br>v.<br><br>GENE YUP,<br><br>  Defendant. | Case No. 3:15-cv-00539-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF No. 30 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Emergency Motion for Injunctive Relief. (Electronic Case Filing (ECF) No. 30.) Defendant filed a response (ECF No. 35), and Plaintiff filed a reply (ECF No. 38). The court addressed the motion at a previously scheduled status conference on February 13, 2017. (*See* ECF No. 31.)

After a thorough review, it is recommended that Plaintiff's emergency motion be denied.

## I. BACKGROUND

Plaintiff, who is a prisoner in custody of the Nevada Department of Corrections (NDOC), filed a pro se complaint pursuant to 42 U.S.C. § 1983. (ECF No. 4.) On screening, the court determined that Plaintiff stated a colorable Eighth Amendment claim for deliberate indifference to a serious medical need related to the dental treatment that Plaintiff received from Dr. Yup at Northern Nevada Correctional Center (NNCC) between June 2013 and January 2015. (Screening Order, ECF No. 3.)

/ / /

Specifically, Plaintiff alleges that in June 2013 he had a dental consultation and was told he needed to have fillings in two of his lower back teeth as well as a crown. (ECF No. 4 at 4.) He submitted medical kites attempting to schedule these procedures over a year, and suffered in extreme pain during this time. (*Id*.) The pain became so unbearable that on December 23, 2014, his unit officer called a "man down." (*Id*.) Plaintiff was still not seen by medical staff or allowed into the infirmary. (*Id*. at 4-5.) He later passed out due to pain. (*Id*. at 5.) Later that day, after another "man down" was called, Plaintiff was seen by Dr. Yup's dental assistant who took an x-ray of Plaintiff's teeth which showed his two lower back teeth were fractured. (*Id*.) Dr. Yup decided to extract the teeth, which concerned Plaintiff because he had previously been told he only needed fillings. (*Id*. at 5-6.) Dr. Yup was unable to get the teeth completely removed and began to saw and cut them out, causing Plaintiff extreme pain. (*Id*.) Dr. Yup denied his requests for pain medication. (*Id*.) Plaintiff passed out due to the pain and eventually Dr. Yup determined he could not remove the roots and sent Plaintiff back to his housing unit with three days-worth of Tylenol with codeine and exposed roots. (*Id*.) He continued to suffer in pain and on January 7, 2015, he saw Dr. Johns, who gave him ibuprofen. (*Id*.) On January 12, 2015, he saw Dr. Yup who again attempted to surgically remove the roots, which caused Plaintiff extreme pain and was again unsuccessful. (*Id*. at 8-9.) Plaintiff avers that he had to remain in the infirmary for observation due to an excessive amount of numbing agent administered by Dr. Yup. (*Id*. at 9.) He continued to experience pain in his mouth and jaw. (*Id*. at 9-10.)

On January 29, 2015, Plaintiff saw oral surgeon, Dr. Pincock, who performed oral corrective/reconstructive surgery by removing the tooth roots and sewing Plaintiff's cheek and gum tissue over the exposed jaw bone. (*Id*. at 10.) In March 2015, he developed an infection and severe swelling at the surgical site. (*Id*. at 11.) He was given oral antibiotics and pain medication. (*Id*.) He saw Dr. Pincock again on April 10, 2015, and Dr. Pincock successfully connected Plaintiff's gum tissue over the exposed jaw bone. (*Id*.)

/ / /

/ / /

Plaintiff now seeks an order for immediate injunctive relief to provide him with urgent, medically necessary medical-dental examinations and treatment, including corrective/reconstructive surgeries. (ECF No. 30 at 3.)

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure provide that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998

(9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III. DISCUSSION

Plaintiff raises three subjects in his emergency motion: (1) an elbow injury that occurred in October 2016, for which he claims he has received no treatment; (2) a denial of dental treatment from the October 2016 time period due to another NDOC dentist, Dr. Petersen, bringing false disciplinary charges alleging Plaintiff was aggressive toward dental staff; and (3) NDOC medical/dental administrative staff threatening a retaliatory transfer of Plaintiff to another institution based upon Dr. Petersen's false allegations.

First, Plaintiff asserts that during the second of these oral surgeries, on October 7, 2016, he received two much anesthetic, and was taken from the building in a wheelchair to await NDOC transport. (ECF No. 30 at 4-5, 28-29.) He claims that with no assistance, he was instructed to exit the wheelchair and enter the transport vehicle, while in arm and leg restraints. (*Id*. at 5, 29.) When he attempted to do so, he collapsed and fell to the ground, landing on his right elbow. (*Id*.) He claims that he experienced several seizures. (*Id*.) 911 was called, and a Carson City Fire Department Paramedic responded, examined him, and requested that they be permitted to transport Plaintiff to a local trauma-care facility. (*Id*.) NDOC purportedly denied the request. (*Id*. at 5-6.) Instead, NDOC transported Plaintiff themselves to NNCC's Regional Medical Facility (RMF). (*Id*. at 6, 29.) Plaintiff asserts that he was not examined by a doctor despite the injury to his right arm and elbow, complaints of pain, and requests to see a doctor. (*Id*. at 6, 30.) Specifically, he contends that his requests for treatment for this injury have been ignored from October 7, 2016 to the present. (*Id*. at 7, 31-32.)

He asks for an injunction compelling NDOC to immediately provide him medical examinations and treatment for the injuries sustained to his right arm on October 7, 2016. (*Id*. at 11.) He then asks the court to order Warden Baca to make sure he receives medical examinations, evaluations and treatment. (*Id*. at 14.)

- 4 -

Second, Plaintiff states that despite the two oral surgeries by Dr. Pincock, his dental issues have not been substantially resolved, and he still suffers in pain. (*Id*. at 7.) He claims his request for treatment have been ignored and denied. (*Id*., 20.) He indicates that his requests have been denied because of false allegations that Plaintiff has been aggressive toward NDOC dental staff by Dr. Petersen. (*Id*. at 8, 20.) He elaborates that Dr. Petersen had false disciplinary charges brought against Plaintiff alleging assault, battery and interfering with staff, which Plaintiff was successful in defeating. (*Id*. at 8, 22.) He also states that the Nevada Attorney General has advised that Dr. Petersen withhold dental examination and treatment from Plaintiff. (*Id*. at 8-9, 20.)

Third, Plaintiff contends that NDOC's medical/dental administrative staff have threatened a retaliatory transfer of Plaintiff to another institution based on Dr. Petersen's purportedly false allegations of aggression. (*Id*. at 9, 15-16, 28.) He asks for an order that NDOC maintain custody of Plaintiff at his present place of confinement, NNCC, while he receives necessary medical and dental care. (*Id*. at 15, 18.)

Plaintiff's emergency motion suffers from two fatal defects: (1) he raises new issues (the alleged failure to treat his right elbow, the refusal to provide treatment due to Dr. Petersen's purported false disciplinary charges, and the threat of transfer to another NDOC facility), that are separate and distinct from the allegations going forward in this action against Dr. Yup; and (2) he seeks injunctive relief from persons/entities that are not parties to this litigation.

When a party requests injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 635 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id*. (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id*.

While "new assertions of misconduct might support additional claims, they do not support preliminary injunctions entirely unrelated to the conduct asserted in the underlying complaint." *Id*. (citing *Devose v. Harrington*, 42 F.3d 470, 471 (8th Cir. 1994)).  For example, in *Devose*, an inmate with a pending lawsuit that asserted an Eighth Amendment claim under 42 U.S.C. § 1983 filed a motion for injunctive relief claiming he was being retaliated against for filing his lawsuit. *Devose*, 42 F.3d at 471. The Eighth Circuit affirmed the district court's denial of the request for injunctive relief, finding that the retaliation claim was entirely separate from the pending Eighth Amendment claim going forward in the case. *Id*.

Here, Plaintiff is proceeding in this action with a single claim that Dr. Yup was deliberately indifferent with respect to dental care provided between June 2013 and January 2015. The new allegations presented in this emergency motion concerning the failure to provide care for an arm injury that occurred in October of 2016, the failure to provide care due to Dr. Petersen's allegedly false disciplinary charges in October of 2016, and recent retaliatory transfer threats are entirely separate from the Eighth Amendment claim proceeding against Dr. Yup. Therefore, the court is without authority to grant the requested relief. Instead, Plaintiff's new allegations are properly lodged using the prison grievance system and, if they remain unresolved, by filing a new action.

Furthermore, the court does not have jurisdiction to issue an injunction directed at a non-party. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969) (concluding it was error to enter an injunction against a non-party). "A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. United States Immigration Service*, 753 F.2d 719, 727 (9th Cir. 1985).

Plaintiff first complaints about not receiving medical treatment for an injury to his elbow after a fall in October 2016, and asks that NDOC and Warden Baca ensure he receive necessary care; however, the only defendant here is Dr. Yup, a dentist at NDOC, who is not responsible for providing medical care for Plaintiff's arm. Second, Plaintiff alleges he has not been provided medical care due to Dr. Petersen's alleged false claims of Plaintiff's aggression; however,

Dr. Yup does not have control over Dr. Petersen's allegations or Dr. Petersen's provision of care. Third, Plaintiff references threats of a transfer to another NDOC facility, but he does not assert that the threats have come from Dr. Yup or that an institutional transfer would be within Dr. Yup's control. For this additional reason, Plaintiff's request for injunctive relief fails.

The court need not address whether Plaintiff has demonstrated a likelihood of success on the merits, irreparable harm, that the equities tip in his favor or the public interest, because the court is without authority to enter injunctive relief with respect to these allegations in the first place.

Finally, in his reply, Plaintiff characterizes his requested relief not as a request for an injunction, but as a "protective order" to assure he will receive necessary medical and dental care; a "writ of mandamus" to compel his custodians to provide him necessary medical and dental care; and, a "writ of prohibition/restraining order" requiring the cessation of retaliation and harassment, including precluding an institutional transfer. (ECF No. 38 at 4.) Despite Plaintiff's effort to re-name his motion, the relief sought remains injunctive in nature and the court must apply the legal standard applicable to a request for a temporary restraining order and preliminary injunction, as it has done above.

In sum, the court recommends that Plaintiff's emergency motion be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Emergency Motion for Injunctive Relief (ECF No. 30) be **DENIED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

/ / /

/ / /

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: February 15, 2017.

*[signature: William G. Cobb]*
_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE