**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN STEVEN OLAUSEN, ) | 3:15-cv-00539-MMD-WGC |
| ) | |
| Plaintiff, ) | **REPORT & RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| GENE YUP, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendant Dr. Gene Yup's Motion for Summary Judgment. (ECF Nos. 44, 44-1 to 44-14.) Plaintiff filed a response (ECF No. 53), and Dr. Yup filed a reply (ECF No. 56).

After a thorough review, the court recommends granting Dr. Yup's motion.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id*.) Defendant is Dr. Gene Yup.

On screening, the court allowed Plaintiff to proceed with an Eighth Amendment claim of deliberate indifference to a serious medical need related to dental treatment Plaintiff received from Dr. Yup at NNCC between June 2013 and January 2015. (Screening Order, ECF No. 3.)

1    Dr. Yup moves for summary judgment, arguing: (1) Plaintiff failed to properly exhaust his

2    administrative remedies before filing suit; (2) Dr. Yup did not violate the Eighth Amendment because

3    he was not responsible for the delay in seeing Plaintiff, and he performed the double tooth extraction

4    under emergency circumstances and provided follow up care and ensured Plaintiff was seen by a

5    specialist; and (3) he is entitled to qualified immunity.

6                                    **II. LEGAL STANDARD**

7            "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to

8    the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th

9    Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences

10   are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing

11   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment

12   if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

13   to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could

14   differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at

15   250.

16       A party asserting that a fact cannot be or is genuinely disputed must support the
         assertion by:
17       (A) citing to particular parts of materials in the record, including depositions,
         documents, electronically stored information, affidavits or declarations, stipulations
18       (including those made for purposes of the motion only), admissions, interrogatory
         answers, or other materials; or
19       (B) showing that the materials cited do not establish the absence or presence of a
20       genuine dispute, or that an adverse party cannot produce admissible evidence to
         support the fact.
21

22   Fed. R. Civ. P. 56(c)(1)(A), (B).

23           If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made

24   on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or

25   declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

26            In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1)

27   determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material

28   fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*,

2

477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. Id. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

That being said,

[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an

3

opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the

district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id*. at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id*. at 1171.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process). The ultimate burden of proof, however, remains with the defendant. *Id*.

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

If the court concludes that administrative remedies have not been properly exhausted, the unexhausted claim(s) should be dismissed without prejudice. *Wyatt*, 315 F.3d at 1120, *overruled on other grounds by Albino*, 747 F.3d 1162.

"If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." *Albino*, 747 F.3d at 1171.

## B. NDOC's Exhaustion Process

Within NDOC, the exhaustion process is governed by Administrative Regulation (AR) 740. (ECF No. 44-10.) An inmate is supposed to attempt to resolve grievable issues through discussion with their caseworker, and then must complete three levels of grievance review—informal, first and second levels— in order to exhaust administrative remedies. (ECF No. 44-10 at 5-9.) When an inmate is dissatisfied with a response at any level, he may appeal to the next level, within the substantive and procedural requirements set forth in AR 740. (ECF No. 44-10 at 4.)

## C. Analysis

According to Dr. Yup, Plaintiff filed three emergency grievances between December 29, 2014 and January 14, 2015, two of which were rejected as non-emergencies, and one which was resolved when Plaintiff agreed to the disposition. (ECF No. 44 at 8, citing ECF No. 4 at 23-28.) Plaintiff filed a follow up grievance regarding the issues raised in his emergency grievances, but Dr. Yup argues that he did not proceed to the second level, as he abandoned the grievance after receiving the first level response. (ECF No. 44 at 8; ECF No. 44-11 at 2-5.)

In his response, Plaintiff states that he spoke to his caseworker, Mr. Jeffries, about the second level grievance "but no received stamped second level was present." (ECF No. 53 at 11.) He indicates that Jeffries "rolled his eyes and said, 'the GR# record shows your second level grievance was received and answered. The Answer Response shows you got it to us and we gave response. There is no need for us to prove to you we logged it properly or not.'" (*Id.*)

In his reply, Dr. Yup argues that the original grievance records show that Plaintiff improperly submitted his first level grievance on a second level form, and this was logged as a first level grievance and responded to as a first level grievance. (ECF No. 56 at 2; Decl. of Brian Ward, ECF No. 56-3 ¶ 8.)

He reiterates that Plaintiff never proceeded to the second level, and did not exhaust his administrative remedies. (*Id.*)

Plaintiff appears to acknowledge that grievance 20063000800 is the only grievance that could have served to exhaust his administrative remedies.

Dr. Yup has submitted the original grievance documentation for grievance 20063000800. (ECF No. 56-1 at 2-5.) Plaintiff submitted his informal level grievance on May 18, 2015. (*Id*. at 3.) The informal level grievance was denied. (*Id.* at 2.) The only other grievance submitted for 20063000800 is a second level grievance dated June 28, 2015. (*Id.* at 5.) The grievance coordinator signed it, and it is stamped received July 1, 2015. (*Id.*) There is an official response which treated the grievance and responded to it as a first level grievance. (*Id*. at 4; Ward Decl., ECF No. 56-3 at 3.)

Plaintiff's response to Dr. Yup's exhaustion argument focuses on a purported discussion he had with his caseworker concerning a second and final level response. He does not, however, explain the absence of all three levels of grievance documentation—specifically a first level grievance. Even if he improperly submitted a second level grievance as a first level grievance, when he received the response treating it as a first level grievance, he was required under AR 740 to complete the final level of review by submitting a proper second level grievance. The evidence does not reflect that Plaintiff did so. Therefore, Plaintiff did not properly exhaust his administrative remedies. While a failure to exhaust normally results in dismissal of a claim without prejudice, AR 740 requires an inmate to initiate a grievance within six months, and Plaintiff would be beyond that time frame at this point. Therefore, summary judgment should be granted and the dismissal should be with prejudice. (*See* ECF No. 44-10 at 6.) In light of the court's conclusion, it need not reach Dr. Yup's substantive Eighth Amendment and qualified immunity arguments.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Dr. Yup's Motion for Summary Judgment (ECF No. 44), and entering judgment in favor of Dr. Yup.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled

"Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: September 13, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE